IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************

UNITED STATES OF AMERICA,

              v.

KAREEM YOUNG,

              Defendant.

*******************************

Criminal Number
3:18-CR-124 (TJM)


## <u>UNITED STATES' TRIAL MEMORANDUM</u>


Dated: April 15, 2019

Respectfully submitted,

GRANT C. JAQUITH
UNITED STATES ATTORNEY

<u>/s/ Tamara Thomson</u>
By:    Tamara Thomson
       Assistant U.S. Attorney
       Bar Roll No. 515310

# TABLE OF CONTENTS

**PAGE**

I.     Statement of the Case................................................................................1

II.    Statement of Facts...................................................................................2

    A.    Prior to filing ………………………………………………………….6

    B.    After filing …………………………………………………………..7

        1.    Richard Hanna, formerly of the United States House of Representatives…8
        2.    Interview of Young …………………………………………………..9
        3.    E-mails between Young and Agent North ………………………………11
        4.    Obtaining assistance from his brother, Naquan Young…………………..11
        5.    Obtaining legal counsel……………………………………………...12
        6.    Young's additional filings with the IRS…………………………………12

III.    Statement of the Law .............................................................................14

    A.    The Elements…………………………………………………………15

    B.    Materiality……………………………………………………………16

    C.    Willfullness……………………………………………………………17

IV.    Evidentiary Issues ...........................................................………………   19

    A.    Admissibility of Documents………………………………………….…19

        1.    Service Center records…………………………………………..   19
        2.    Business records……………………………………………………20

    B.    Testimony concerning the sum and substance of events and conversations ........20

    C.    Authentication of letters.............................................................21

    D.    Summary witness .....................................................................21

    E.    Introduction of intrinsic evidence and evidence pursuant to FRE 404(b) ............22

    F.    Photocopies ............................................................................24

# TABLE OF CONTENTS

G.     Certified Public Records. .........................................................................24

H.     Admissions.............................................................................................25

V.     Conclusion ...................................................................................................25

## I.      STATEMENT OF THE CASE

A.      Jury selection is scheduled to commence at the discretion of United States District Judge Thomas J. McAvoy on April 29, 2019, in Binghamton, New York.

B.      The defendant is in state custody.

C.      Jury trial has not been waived.

D.      The estimated duration of trial is approximately 2-3 days.

E.      The Indictment charges the defendant with one count of knowingly making and presenting to the Internal Revenue Service, an agency of the United States Department of the Treasury, a claim against the United States for payment of a refund of taxes in the amount of $6,125,000, which he then and there knew to be false, fictitious, and fraudulent, by preparing and causing to be prepared and mailing and causing to be mailed to the Internal Revenue Service, a United States Individual Income Tax Return, Form 1040, in violation of 18 U.S.C. § 287.

F.      Expert witnesses:   At this time, expert testimony will not be presented.

G.      Other potential witnesses:   During the course of preparing for trial, the government may come across other potential witnesses.   Our final witness list will be submitted prior to commencement of the trial.

## II.      STATEMENT OF FACTS

Kareem Young prepared a form 1040, individual tax return, for calendar year 2013 and mailed the return to the Internal Revenue Service ("IRS") in Austin, Texas.   The return was dated February 21, 2014, and the IRS received the return on February 24, 2014.   Young signed the return, under penalty of perjury, and declared the following for income, tax and credits, and

4

payments:   $6,125,000 income (line 21); total income $6,125,000 (line 22); adjusted gross income (line 38); taxable income of $6,125,000 (line 43); federal tax withheld from Forms W-2 and 1099 of $6,125,000 (est..)(line 62); credits of $6,125,000 (line 71(b)); total payments of $6,125,000 (line 72); and total amount overpaid of $6,125,000 (line 73).   Attached to the filed form 1040, was form 1096, Annual Summary and Transmittal of U.S. Information Returns.   Young's name is listed as the filer, and in box 4, Young declares $6,125,000 as the federal income tax withheld.   In box 5, Young declares $6,125,000 as the total amount reported.

Young attached to the 1040 and 1096, a bogus form 1099-OID claiming, on line 4, federal income tax withholdings of $6,125,000, with Mr. Gerald F. Mollen, District Attorney listed as recipient (on one OID) and payer (on the other).   Young prepared the false and fictitious form 1099-OID.[1]   The bogus form 1099-OID notes the description of the Original Issue Discount as "all OMB No: 9000-0045 Bonds/Appearance Bond, Case #CR555555, State of New York v. Kareem Young."   Attached to the 1040 and 1099-OID, was a letter, authored and signed by Kareem Young, dated February 3, 2014, and addressed to: Gerald Mollen, District Attorney; Judge Joseph F. Cawley, County Court; and Richard R. Blythe, County Clerk.   In the letter, Young requested the filing of a federal 1099 OID for an appearance bond, in the amount of $500,000, and any other bonds subsequent to the True Bill Indictment. Additionally, Young attached W-2 and earning statements from the Center for Employment Opportunities (wages totaling $944.41) and 34-36

---

[1] A form 1099-OID is a tax form intended to be submitted to the IRS by the holder of debt instruments (such as bonds, notes, or certificates) which were discounted at purchase to report the taxable difference between the instruments actual value and the discounted purchase price. The form 1099-OID, like other 1099 forms, is completed by the payer of income, like an employer, and sent to the IRS and the recipient of the income.   *See* Wikipedia, Form 1099-OID, https://en.wikipedia.org/wiki/Form_1099-OID (last visited April 14, 2019).

Pine LLC (wages totaling $2,182.95), though the earnings were not included on the return prepared and filed by Young.   Young's total reported income in 2013 was $3,127.36.

### A.  Prior to filing

On December 12, 2013, Sharon Brown, Young's New York State parole officer conducted a home visit and search of Mr. Young's residence.   During the search, Ms. Brown found, among other things, correspondence between Young and Reginald Taburnero, an inmate at Groveland Correctional Facility.   Young told Ms. Brown that Tabernuro was writing him to tell him how to complete his taxes.   Ms. Brown advised Young that he was not permitted to communicate with inmates.   The two continued communicating, and Young advised Tabernuro about the search of his residence and warned Tabernuro to address letters to Young's girlfriend, and warned Tabernuro of a possible search of Tabernuro's cell based on his parole officer's discovery of their communication.[2]

In a letter from Tabernuro to Young dated November 28, 2013, found by Ms. Brown, Tabernuro provides Young with handwritten versions of the exact letters that Young eventually sends to District Attorney Gerald Mollen, et. al, and outlines what tax forms Young needed to file.[3] Young admitted the Special Agent North that the November 28, 2013 letter was sent to him by

---

[2] Several letters were discovered between Tabernuro and Young when Ms. Brown searched Young's residence.   Additional letters were discovered during a search of Tabernuro's cube by Department of Corrections staff.   Finally, two letters, from Young to Tabernuro were copied as part of a mail watch initiated by the Department of Corrections for Tabernuro's incoming and outgoing mail.

[3] On May 12, 2016, Tabernuro was interviewed.   Tabernuro stated that he did not know what IRS form 1099-OID was, that he had not filed taxes in years, and that he was not familiar with "Kareem Young", "Prince", "Slim", "Nature of Remedy", "Lakwanza Dooley", or "Karen Young". Tabernuro denied writing and receiving letters with his name on it while in Groveland prison. Tabernuro suggested that someone else was using his name and prison identification number.

6

Taburnero.

The February 3, 2014 letter attached to Young's 2013 1040 form, seeking a Form-1099 from Broome County[4], was a copy previously mailed to Broome County District Attorney Gerald Mollen on or about February 6, 2014.   In response to Young's letter, District Attoney Gerald Mollen mailed Young a sharply worded letter on February 23, 2014, denying the legitimacy of Young's request and counseling Young to consult with a lawyer or financial advisor before engaging in fraudulent conduct[5].   The letter concluded with a stern warning: "[a]s they say, forewarned is forearmed."

**B.  After Filing**

Following the filing of Young's 2013 1040, the IRS advised Young, via a letter dated April 24, 2014, that they needed additional information to process his 2013 return, and recommended that Young respond to the information request either by the secure IRS website (noted in the letter), or by calling the toll-free phone number IRS provided.[6]

---

[4] Broome County does not hold appearance bonds related to defendants, including Young, and does not withhold money on their behalf, nor was Broome County the holder of debt instrument or the payer of income.   Broome County did not issue Young a 1099-OID and had no reason to do so.

[5] In the letter, District Attorney Mollen states: "[t]his is written for two reasons: (1) to formally deny the legitimacy of the request you set forth; and (2) to counsel you, given your criminal history and possible exposure if convicted of additional crimes, to consult with a licensed attorney or financial advisor before engaging in any fraudulent conduct by making use of demand set forth in your letter of February 3rd."   The government will redact the following sentence in District Attorney Mollen's letter to eliminate reference to Young's criminal history: …" *given your criminal history and possible exposure if convicted of additional crimes,"* to minimize any prejudice to Mr. Young.

[6] Following the letter, Young made several visits to Taxpayer Services in Binghamton, New York. The majority of the visits were audio-recorded. During his initial visit, Young did not bring his paperwork, but on later visits, Young provided the Taxpayer Service employees with signed copies of his 2013 tax return, w-2s, two form 1099-OIDs, one f-1096, his social security card and Broome County Sheriff's office ID card.   Young was not forthcoming about his filing with the IRS,

The IRS sent Young two letters with a notice date of May 26, 2014.   In one letter, Notice CP12R, the IRS notified Young that his refund was adjusted and that he was now due a refund in the amount of $3,742,132.25, based on Young's reported payments of $6,125,000, which would generate a tax owing of $2,382,867.75, thereby generating an overpayment of $3,742,132.25. This correspondence was sent from the IRS Service Center in Andover, Massachusetts. The second letter, Notice CP72, was from the Frivolous Return Program in Ogden, Utah, notifying Young that his tax return was unsubstantiated and claimed one or more frivolous positions.   Young was told that he needed to send in a corrected return within 30 days of the notice.

### 1.   Richard Hanna, formerly of the United States House of Representatives from New York, 22nd District, and his Metro Center Office

On August 5, 2014, Young went to the office of Representative Richard Hanna in Binghamton, N.Y. and filled out constituent paperwork seeking assistance with obtaining his refund.   District Director Patricia Vail Dellonte assisted Mr. Young, and Young provided Representative Hanna's office with the adjusted refund notification letter Notice CP12R of May 26, 2014 (calculating a refund owed to Young of $3,742,132.25) and complained that he had not received his refund.

As a constituent, Young asked Representative Hanna's staff for assistance. Ms. Dellonte had Young complete constituent paperwork, including a privacy form, and Ms. Dellonte sent the paperwork to the IRS Taxpayer Advocate Office in Buffalo, together with a letter dated August 7, 2014, signed by U.S. Representative Hanna.   Representative Hanna never met with or spoke to

---

initially representing that he filed w-2's.   In May, Young made additional visits to the Binghamton Tax Payer Services.   Young discussed receiving both IRS letters dated May 26, 2014.   Young was advised that the IRS sent both letters and held the position that Mr. Young had taken a frivolous position in his tax return and needed to file an amended return.

Young.   Representative Hanna's letter asked Mr. William Worth, Problem Resolution Officer at the IRS in Buffalo to review Mr. Young's form and correspondence and provide information that might be helpful to Mr. Young.   Representative Hanna asked that any information be sent to Garth Curtis in Representative Hanna's Utica Office.

In a letter dated August 20, 2014, the Taxpayer Advocate Service center in Buffalo responded to Rep. Hanna's letter stating that the IRS was conducting an examination of Young's 2013 tax return.[7]   The letter explained that the IRS was reviewing Young's income and federal tax withholding reported on the return.   Further, the letter instructs that if Young felt his filed return was correct, he needed to provide a copy of the Form 1099-OID that confirms the interest income and the withholding reported.   The letter indicated that Young must also provide a letter from the bank confirming the amounts reported.   Finally, Young was instructed, that if the interest income and withholding reported was incorrect, to provide a complete, signed Form 1040X, Amended U.S. Individual Income Tax Return, with attachments and properly reporting the income and deductions for 2013.

### 2.    Interview of Young

On October 22, 2014, IRS Special Agents Kelly Morgan and Tom North interviewed Young.   Young admitted to filing the form 2013 1040 U.S. individual income tax return.   Young stated that the $6,125,000 figure was based on the time he did in prison, eighteen years, and that it was estimated.   Young stated the $6,125,000 was from case-related bonds and that Congressman Hanna's office told him that this only applies if he is still incarcerated.   Young maintained that

---

[7] The letter was signed by IRS Taxpayer Advocate William Wirth, but the letter was prepared by Andrea Reed, at the Taxpayer Advocate Service. Mrs. Reed handled Young's case at the Taxpayer Advocate Service.

Congressman Hanna's office did an evaluation of his 1099 and 2013 1040 tax return when he went to their office.

Young admitted that he received the February 23, 2014, letter from District Attorney Gerald Mollen, and admitted to writing the February 3, 2014 letter requesting a completed 1099 OID, and that he found the letter on the internet.

When asked about his correspondence with Reginald Tabernuro, Young first denied knowing Tabernuro and receiving correspondence from Tabernuro, but he then changed his story and admitted to knowing Reginald Tabernuro Correctional Facilities and receiving correspondence from him.   Young was shown a letter addressed to "Prince" and dated November 28, 2013, and Young admitted that Prince was him, and that the letter was taken by his parole officer Sharon Brown.

When Young was asked about how he learned about preparing and filing tax returns he admitted the following: he had done internet research, read the books "Cracking the Code" and "Redemption 4.5" materials from Robert Kelly; studied law while incarcerated; learned about bonds and writing letters from the prison law library; all the verbiage in the letters came from the internet; that Young taught Tabernuro how to file tax returns; Tabernuro had filed a similar return and received a $400,000 refund check; Tabernuro then taught others how to file; Young told Tabernuro not to do it while in jail as he would get in trouble for contraband; and others in jail had started putting liens on officers.

Young admitted that following the filing of his 2013 return, he went to the Binghamton IRS Office for blank forms and the IRS office told him that the only thing he could claim was his W-2 wages.   Young admitted that he received the two letters dated May 26, 2014 (Notice CP12R

and Notice CP72). Finally, Young asked Agents Morgan and North for the specifics of why what he did didn't work.

### 3.    E-mails between Young and Agent North

Following the interview, Agent North received several e-mail messages from Young.    On November 3, 2014, at 5:16 p.m., after Young had sent Agent North several e-mail messages with attachments including: the Transcript of Civil Rights Act (1964), a blank typed request for a form 1099 (like the one Young sent to District Attorney Mollen); Using a Commercial Process for Simple Justice; blank Affidavit claiming a dishonor (as referenced in the request for a form 1099); typed letter to the IRS addressing the dishonor (unsigned); and Eliminate Debt-This is how to take control of your Straw Man Bond and gain your personal God given freedom.    Young stated "[t]he criminal investigation division of the IRS is responsible for examination of return deficiency assessments and for initial conferences and settlement of activities respecting tax liability.    So my question to you is how can we settle this activity without the potential for tax fraud?"    Young sent another e-mail to Special Agent North on November 6, 2018, with the following link: http://legalucc.com/strawman_faq.htm.    Special Agent North replied via e-mail on November 18, 2014, at 8:03 p.m. and stated:   [y]ou know you are under criminal investigation.    At this point, you are being investigated for violations of Title 26 USC Section 7206(1) False Claims and Title 18 USC 287 False Claims.   Your best avenue to pursue is to seek legal counsel.   Just to make it clear, you are being investigated for tax fraud."

### 4.    Obtaining assistance from his brother, Naquan Young

On January 28, 2016, Naquan Young, Kareem Young's brother went to Taxpayer Service in Binghamton, New York, to inquire about the status of Kareem Young's 2013 tax refund.

Naquan Young had a handwritten Power of Attorney form ("POA"), making him the Power of Attorney for Kareem Young.   Naquan Young inquired about the status of the refund at his brother's request.

On April 14, 2016, Special Agent North interviewed Naquan Young and Naquan Young stated that he had picked up the blank POA and sent it to his brother to be filled out. When he received the completed form back from Kareem, Naquan went to the IRS Taxpayer Service in Binghamton, N.Y. to inquire about his brother's refund.   Naquan Young stated that Kareem never told him the amount of the refund.

### 5.      Obtaining legal counsel

On or around December 2016, Young contacted attorney Jeremy Sedelmeyer to assist him with getting the refund noted in CP12R.   Young provided attorney Sedelmeyer with the IRS Notice CP12R (noting the refund due of $3,742,132.25) and the letter from Representative Hanna's office inquiring with the IRS about Mr. Young's refund.   Tellingly, Young failed to provide attorney Sedelmeyer with the IRS Notice CP72, stating that the position Young was taking was frivolous and advising him to file an amended return.   Nor did Young advise attorney Sedelmeyer that he was under criminal investigation.   Attorney Sedelmeyer contacted the IRS seeking transcripts in December 2016, and followed up via written correspondence with the IRS in Andover, Massachusetts on January 9, 2017, asking for any prior correspondence regarding Young's claim. Thereafter, Sedelmeyer declined representation of Mr. Young and had no further correspondence with the IRS besides the December 2016 request for transcripts and the January 2017 request for prior correspondence.

### 6.      Young's additional filings with the IRS

On February 13, 2017, the IRS in Ogden, Utah received a 2013 1040EZ Income Tax Return for Single and Joint Filers from Young, signed by Young and dated February 7, 2017.   The return is not an amended or corrected return, and nowhere on the return does it indicate that the return is intended to be an amended or corrected return.   Instead, the return lists Young's earnings from the Center for Employment Opportunities and 34-36 Pine LLC for total wages reported on line 1 of $3,127.36.   The return seeks a refund of $160.83 based on his total federal income tax withheld in his w-2.   This return was not prepared by attorney Sedelmeyer.

On February 21, 2017, the IRS in Ogden, Utah received a 2013 1040 U.S. Individual Tax Return from Young, signed by Young and dated February 21, 2014 (the date of his original filing) on the second page of the return. The second page appears to be a photocopy of page two of his original filing.   However, the first page is not a copy of the original filing.   Just eight days after filing the 2013 1040EZ, Young again prepared a form 1040, individual tax return, for calendar year 2013 and mailed the return to the Internal Revenue Service ("IRS") in Ogden, Utah, and declared the following for income, tax and credits, and payments:   $6,125,000 income (line 21); total income $6,125,000 (line 22); adjusted gross income of 6125 (sic)(line 37); adjusted gross income $6,125,00 (line 38); taxable income of $6,125,000 (line 43); federal tax withheld from Forms W-2 and 1099 of $6,125,000 (est..)(line 62); credits of $6,125,000 (line 71(b)); total payments of $6,125,000 (line 72); and total amount overpaid of $6,125,000 (line 73).   Attached to the filed form 1040, was the IRS Notice CP12R form (indicating a refund of $3,742,132.25); Young did not file the IRS Notice CP72, advising him that he had taken a frivolous position, with

the return.   The February 21, 2017 return sought a refund of $6,125,000.[8]

On April 13, 2017, via the electronic filing system, the IRS received a 2016 EZ 1040 Income Tax Return for tax year 2016 from taxpayer Young.   The 1040EZ used all of the employment information from the 2013 w-2's for Young's two employers in 2013 (the Center for Employment Opportunities and 34-36 Pine LLC).   Despite the fact that the income was earned in 2013, and that Young had already provided this wage information to the IRS on his 2013 1040EZ Income Tax Return, filed just two months prior, Young included the income on his 2016 1040EZ. The 2016 1040EZ should contain the wages from 2016, not 2013.

Young sent further correspondence to the IRS in July and August 2017 questioning his transcripts and attaching the correspondence from attorney Sedelmeyer.   Despite the patently false information contained on the 2013 1040, the advisement by District Attorney Mollen, and the advisement by Special Agent North, Young persisted in advancing his request for a refund, including utilizing his wages for the tax year 2013 (contained in his 2013 1040 claim) in tax year 2013 and 2016.

## III.   STATEMENT OF THE LAW

The single-count Indictment charges Young with false claim for refund in violation of 18 U.S.C. § 287.   Section 287 provides as follows:   "[w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and

---

[8] This return, tellingly, did not claim a refund of $3,742,132.25, as noted in the CP12R that Young repeatedly used to give an appearance of legitimacy with his correspondence with the IRS and others.

shall be subject to a fine in the amount provided in this title."   18 U.S.C. § 287.

### A.     The Elements

In order to establish a violation of 18 U.S.C. § 287, the following elements must be established beyond a reasonable doubt:

1.     First, that on or about February 24, 2014, the defendant knowingly made or presented a claim to the Internal Revenue Service, an agency of the United States Department of the Treasury;

2.     Second, that the claim which was made or presented was a claim against the United States or a department or agency of the United States; and

3.     Third, that the defendant presented the claim knowing that it was false, fictitious or fraudulent as to a material fact.

The filing of a false tax return seeking an unjustified tax refund forms the basis for a conviction under the statute.   *United States v. Parsons,* 967 F.2d 452, 456 (10th Cir. 1992); *United States v. Drape,* 668 F.2d 22, 26 (1st Cir. 1982); *United States v. McBride,* 362 F.3d 360, 369 (6th Cir. 2004).   By filing a false tax return seeking an unjustified tax refund, the defendant is using a fraudulent means to secure an unjustified monetary payment from the government."   *McBride,* 362 F.3d at 369.   Violation of 18 U.S.C. § 287 does not require proof that the claim was honored or successful in defrauding the government.   *United States v. Coachman*, 727 F.2d 1293, 1302 (D.C. Cir. 1984).   Filing a false tax refund claim is clearly covered by 18 U.S.C. § 287.

When a fraudulent tax return is signed and filed it is presented.   *Parsons,* 967 F.2d at 456. Filing a federal income tax return to the IRS constitutes a "claim" under 18 U.S.C. § 287. *See United States v. Haynie*, 568 F.2d 1091, 1091–92 (5th Cir. 1978).   A 'claim' is generally defined

as an attempt to secure money or property from the United States Treasury.  *See, e.g., United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) ('claim' includes all fraudulent attempts to cause government to pay out money); *United States v. Farina*, 153 F. Supp. 819, 821 (D.N.J. 1957) ('claim' under False Claims Act restricted to conventional meaning of demand for money or property from federal government).

The United States Department of Treasury is a department or agency of the United States and the District Court may so instruct the jury.  *See United States v. Morgan,* 3 F.App'x 633, 635 (9th Cir. 2001)(holding that in a prosecution for presenting false claims to the Internal Revenue Service, it was not improper for the district court to determine as a matter of law that the IRS and the Department of Treasury were agencies and departments of the United States, given statute and regulation which provided same).  *See also* 5 U.S.C.A. §101; 26 C.F.R. § 601.101.

### B.    Materiality

The Second Circuit has held that materiality is not an element of the offense proscribed by §287, *United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir. 1984).  However, in light of the Supreme Court's decision in *United States v. Neder*, 527 U.S. 1, 20-25 (1999), holding that materiality is an element of bank fraud, wire fraud, and mail fraud, the safer course of action is to include an instruction on materiality as an element.  *See United States v. Foster*, 229 F.3d1196, 1196 & n.1 (5th Cir. 2000) (while expressly not deciding the issue, the Fifth Circuit reads *Neder* to require a materiality instruction and states that "the better practice would be to give the instruction in a § 28[7] false claim offense").  In *United States v. Cordero*, No. 99-1363, 2000 WL 227818 at *1 (Jan. 21, 2000), the Second Circuit noted how the Court had not previously decided whether materiality was an essential element of the offense of false claims under 18 U.S.C § 287,

and noted how the Circuit's remained split on the issue.   *Id.* at 1.   Ultimately, the *Cordero* Court stated that the issue did not need to be addressed as the District Court instructed the jury on the element of materiality.   As a cautionary matter, the United States is amenable to the inclusion of materiality as an element of the charged offense.   The United States included an instruction on materiality in its submitted jury instructions, filed April 15, 2019.

      **C.**    **Willfullness**

      Willfulness is not an essential element of a violation of 18 U.S.C. § 287; instead the statute expressly requires knowledge that the claim is false, fictitious or fraudulent. *United States v. Precision Medical Labs., Inc.,* 593 F.2d 434, 443 (2d Cir. 1978) (holding that the scienter requirement for 18 U.S.C. § 287 is "knowledge"); *Parsons*, 967 F.2d at 456; *United States v. Irwin,* 654 F.2d 671, 682 (10th Cir. 1981) *cert. denied*, 455 U.S. 1016;   *See Kercher v. United States,* 409 F.2d 814, 817-818 (8th Cir. 1969).   In *United States v. Clarke,* 801 F.3d 824 (7th Cir. 2015) the Seventh Circuit held that the government need not prove willfulness in a 18 U.S.C. § 287 case, instead the government must prove that the defendant made a claim upon the United States knowing the claim was false.   *Id.* at 827-828.   The defendant in *Clarke* filed a patently false return claiming unsubstantiated income, withholdings where no funds were ever withheld, and fiduciary fees with no explanation for the fees.   *Id.*   The court held that patently false and groundless tax returns are sufficient to demonstrate the defendant's knowledge of the falsity of the claims in violation of 18 U.S.C. § 287.   *Id.*   Here, the defendant entered patently false income and withholdings to claim an overpayment and entitlement to a refund in the amount of $6,125,000 and his tax returns demonstrate that knowledge on its face and provides sufficient evidence that Young knew the falsity of his claim.

Should the defendant request a good faith instruction, such an instruction is not justified since willfulness is not an element of the offense.   As the *Clarke* court noted, "[a] good faith instruction is 'essentially a claim that the defendant did not act willfully.'"   *Id.*   Where willfulness is not an element of the offense, a defendant is not entitled to a good faith instruction. Where a conviction is based on a finding of knowing wrongdoing, the District Court is under no obligation to provide an additional good faith instruction.   *See United States v. James*, 712 F.App'x. 154, 158 (3rd Cir. 2017).

The evidence at trial will establish each of the elements of the offense.

Defendant Young made and presented to the IRS a Form 1040, together with his self-prepared Form 1099-OID, which falsely claimed a total of $6,125,000 in income and $6,125,000 in federal income tax withholdings, and made a claim for a refund in the amount of $6,125,000. The form 1040 declares: income on line 21 of $6,125,000; adjusted gross income on line 38 of $6,125,000; taxable income of $6,125,000 on line 43; federal income tax withheld from forms W-2 and 1099 of $6,125,000 on line 62; credits of $6,125,000 on line 71; total payments of $6,125,000 on line 72; and an overpayment (generating a refund) of $6,125,000 on line 73.   Next to his signature, Young identifies his occupation as "Food Prep."   Young did not earn $6,125,000 in income, nor did he have tax withholdings of $6,125,000 or payments to generate a refund of $6,125,000.   Further, on the attached form 1096, Young identifies the federal income tax withheld of $6,125,000 and the total amount reported as $6,125,000.   The form 1099-OID attached to the 1040 and 1096, similarly contain patent falsities, in that the form 1099-OID contains a stated federal income tax withheld of $6,125,000 by the payer Kareem Young to Mr. Gerald F. Mollen and by Mr. Gerald F. Mollen to Mr. Richard R. Blythe.

Kareem Young admitted that the $6,125,000 figure contained on his return was based on the time he spent in prison, and was from case-related bonds, which is not income, nor is it reportable as income and it is not tax withholding, nor should it be reported as tax withholding. By making and presenting the 1040, 1096, and 1099's the defendant knowingly made or presented a claim against the United States Department of Treasury.   The defendant knew his tax return was patently false because he did not have income or withholdings in the amount he reported.   The claims were material to a determination of the taxes overpaid or taxes due.

## IV.   EVIDENTIARY ISSUES

### A.   Admissibility of Documents

As in all tax cases, the government will offer numerous documents into evidence.   Because the defendant has not stipulated to the admissibility any documents to date, the government will briefly address the issue of their admissibility.

#### 1.   Service Center records

The government will offer documents from Internal Revenue Service Centers through an IRS witness.   These documents will include: (1) income tax returns, which are admissible under Federal Rules of Evidence 803(6), 803(8), and 902, and 26 U.S.C. § 6064.   *United States v. Suirie*, 945 F.2d.143, 148 49 (6th Cir. 1991); *United States v. Bowers*, 920 F.2d 220, 223 24 (4th Cir. 1990) (admissibility of Internal Revenue Service computer records); *United States v. Neff*, 615 F.2d 1235, 1241-42 (9th Cir. 1980); *United States v. Stone*, 604 F.2d 922, 925 (5th Cir. 1979) (reports prepared by government agency for purposes independent of specific litigation are admissible); *United States v. Farris*, 517 F.2d 226, 227 (7th Cir. 1975).

### 2.      *Business records*

The government will also offer business records pursuant to Rule 803(6) of the Federal Rules of Evidence including IRS business records from the Frivolous Return Program and other third party business records such as Forms 1099.   These records are admissible pursuant to an exception to the hearsay rule as provided by Rule 803(6).

A business record must satisfy four requirements in order to be admissible under Rule 803(6): (1) it must have been made in the course of a regularly conducted business activity, (2) it must have been kept in the regular course of that business; (3) it must have been made at or near the time of the events it records; and (4) it must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.   *See LaDay v. Catalyst Technolow. Inc.*, 302 F.3d 474, 481 & n.7 (5th Cir. 2002).   The foundation for the admission of a business record may be laid by any other qualified witness.   Fed. R. Evid. 803(6).

Records that satisfy these four requirements should be admitted unless "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6).

### B.   Testimony concerning the sum and substance of events and conversations

Witnesses will be asked to testify concerning their recollection of events and conversations. Testimony concerning the substance of conversations is clearly admissible in accordance with general rule that ". . . the substance or effect of the actual words spoke will suffice, the witness stating this substance as best he can from the impression left upon his memory."   3 Wigmore on Evidence §2097 (3d Ed. 1940).   The witness' inability to provide further detail is then considered by the jury in deciding the weight that such testimony shall be given.

Recent case law continues this sensible approach, requiring that the witness relate the "substance or effect" and "context of the statement" as a whole.   *See United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987), *cert. denied*, 484 U.S. 844.   This rule recognizes that "verbal precision cannot be expected when the source of evidence as to an utterance is the memory of a witness." *Id.*   Accordingly, the witnesses should be allowed to state their best recollection of the substance of events and conversations.

### C.     Authentication of Letters

Federal Rule of Evidence 901(a) provides that:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Proof of the connection of an exhibit to the defendant may be made by circumstantial evidence. *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir. 1984); *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982); *United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir. 1975). See *United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir. 1983).   "[T]he prosecution need only prove a rational basis from which to conclude that the exhibit did in fact belong to the [defendant]."   *Mendel*, 746 F.2d at 167; *United States v. Natale*, 526 F.2d at 1173.   "The ultimate question is whether the authentication testimony is sufficiently complete so as to convince the court of the improbability that the original item had been exchanged with another or otherwise tampered with."   *Mendel*, 746 F.2d at 167; *Howard-Arias*, 679 F.2d at 366; *United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992).   The United States will authenticate various letters by and between Young and Tabernuro with circumstantial evidence, including admissions by Young.

### D.     Summary Witness

To summarize the evidence presented by the government and to assist the jury in the examination of income calculations, the government intends to present summary witness

testimony.   The use of such a witness under these circumstances has been consistently approved

by the courts.   *See United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001) (allowing use of

IRS agent as summary witness); *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993)

(approving the use of an expert summary witness to testify about the trial proceedings, the criminal

investigation, and general tax matters); *United States v. DeClue*, 899 F.2d 1465, 1473 (6th Cir.

1990); *United States v. Bosch*, 914 F.2d 1239, 1249 (9th Cir.1990); *United States v. Barnette*, 800

F.2d 1558 (11th Cir. 1986).

In this case, the government may present Tom North, an IRS Special Agent, as its summary

witness.   If called as a witness, Agent North would testify in connection with summaries that will

be prepared based on the government's evidence presented during the trial.

Because a summary witness's testimony is based on evidence admitted at trial, his or her

presence in the courtroom throughout trial is permitted even when other witnesses are sequestered

pursuant to Federal Rule of Evidence 615.   *See United States v. Straass*, 473 F.2d 1262, 1263 (3rd

Cir. 1974); *United States v. Mohney*, 949 F.2d 1397 (6th Cir. 1991); *United States v. Bertoli*, 854

F.Supp. 975, 1037 (D.N.J. 1994).  The government therefore requests that Agent North be

permitted to remain in the courtroom throughout the trial as a potential summary witness.

### E.   Introduction of Intrinsic Evidence and Evidence Pursuant to FRE 404(b)

In this case, the defendant is charged with filing a false claim for a refund of taxes with the

IRS.   To establish his guilt, the government must establish that the defendant knowingly made a

claim to the IRS for a refund of taxes, knowing that the claim was false, fictitious or fraudulent.

18 U.S.C. § 287.   Other wrongs or acts, in this context, are probative of the defendant's intent,

knowledge, and motive.   In this matter, other wrong acts probative of the defendant's intent,

knowledge and motive are the following filings:   (1) the filing of a 2013 1040EZ Individual Tax Return on February 13, 2017, seeking a refund of $160.83 based on his actual 2013 earnings; (2) the filing on February 21, 2017, of the 2013 1040, again seeking the refund of $6,125,000 based on the 1099-OID scheme; and (3) the filing on April 13, 2017, of the 2016 1040EZ return, attempting to gain a refund for the tax year of 2016, based on wages earned in 2013, that were claimed in the filing of the 2013 1040EZ on February 13, 2017.   A copy of each of the cited returns is appended to the trial memo as exhibits A1, A2, and A3, but filed under seal as the documents are the defendant's tax returns.   Each of these tax filings demonstrate knowing behavior on behalf of the defendant and counter any claim of mistake or lack of intent. Additionally, these filings show the defendant's motive; that is, to file patently false tax returns in the hopes of generating a refund.

Rule 404(b) of the Federal Rules of Evidence allows the introduction of other crimes or bad acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.   Fed. R. Evid. 404(b).   Rule 404(b) applies to evidence of wrongful acts which are extrinsic to the charged offense.   The Second Circuit follows an inclusionary approach to the admission of other act evidence under Rule 404(b) and allows such evidence to be admitted "for any purpose other than to demonstrate criminal propensity."   *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (per curium).   To determine whether the admission of other acts evidence is proper, the district court must consider whether "(1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; [and] (3) its probative value is substantially outweighed by its prejudicial effect."   *Id.*   If the other act evidence is admitted, the Court can give an appropriate limiting instruction to the jury if requested by the defendant.   *Id.*   The three

filings are offered for a proper purpose, are relevant to the false claim, and their probative value is substantially outweighed by its prejudicial effect.

Each of these particular acts, however, are intrinsic evidence, not subject to Federal Rule of Evidence 404(b).   *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).   In *United States v. Green*, 617 F.3d 233 (3d Cir. 2010), the Court held that evidence is either intrinsic, and not subject to Rule 404(b), or extrinsic. Evidence is intrinsic if it directly proves the charged offense. *Id.* at 248–49.   Intrinsic evidence also can consist of "uncharged acts performed contemporaneously with the charged crime ... if they facilitate the commission of the charged crime." *Id.*   In this case, Kareem Young filings are evidence that proves the charged offense in that they affirm his motive, knowledge and intent.   *See United States v. Collorafi*, 876 F.2d 303, 305-6 (2d Cir. 1989) (evidence that defendant persisted in tax practice already held improper by federal judge constitutes strong circumstantial showing of wrongful intent). Each of the filings directly relates to the filing at issue and the wages contained in that filing that form the basis for the refund requested.   Should the court find that each of the tax returns filed are not intrinsic evidence, the government seeks their admission as other wrongs pursuant to Federal Rule of Evidence 404(b).

### F.     Photocopies

The government will seek to introduce photocopies of documents. Photocopies are admissible pursuant to Federal Rule of Evidence 1003, which states that a duplicate is admissible to the same extent as an original as long as there is no genuine question regarding the original's authenticity or the circumstances make it unfair to admit a duplicate.   Fed. R.Evid. 1003.

### G.     Certified Public Records

The government anticipates offering into evidence certified copies of certain public records.   Such certified copies require no extrinsic evidence of authenticity for admissibility. Fed. R. Evid. 902(1) and (4); *see also United States v. Dancy*, 861 F.2d 77, 79 (5th Cir. 1988).

### H.   Admissions

The government intends to offer oral admissions made by the defendant to Special Agent Tom North.   A copy of the admissions by the defendant is appended as Government's Exhibit B. A defendant's statement is never considered hearsay when offered by the government (since it would qualify as the admission of a party opponent). Fed. R. Evid. 801(d)(2)(A).   Rather, the statement is an admission and it does not require any special guarantee of trustworthiness. Conversely, the defendant cannot admit his own statements under this exception to the hearsay rule since when offered by the defendant these statements would not qualify as admissions of a party opponent.

## V.         **CONCLUSION**

Through this trial memorandum the government has attempted to summarize those principles of law which we believe to be applicable in resolving issues that the Court may face during trial.   We respectfully request an opportunity to submit additional legal authority in connection with such other issues as may arise.

Dated: April 15, 2019                              Respectfully submitted,

GRANT C. JAQUITH
UNITED STATES ATTORNEY

*/s/ Tamara Thomson*
By:   Tamara Thomson
Assistant U.S. Attorney
Bar Roll No. 515310